IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JULENE WILKINS,

     *Plaintiff,*

    v.

SWINTON HOME CARE, LLC, *et al.*,

     *Defendants*

Case No. 24-cv-2601-ABA

## MEMORANDUM OPINION

Plaintiff Julene Wilkins ("Plaintiff" or "Ms. Wilkins"), sued Defendant Swinton Home Care, LLC ("Swinton LLC") and the company's owners, Phyllis F. Swinton and Omari H. Swinton ("Individual Defendants"), for wrongful termination and employment discrimination based on her Jamaican national origin, ancestry, ethnicity, and characteristics. Defendants have moved to dismiss all counts as to the Individual Defendants and all but one count as to Swinton LLC. For the reasons that follow, the Court will grant the motion in part and deny it in part.

## I.    BACKGROUND[1]

Ms. Wilkins was born and raised in Jamaica and is "of Jamaican ancestry and ethnicity." ECF No. 21 ¶¶ 10, 11. She began working for Swinton LLC as a scheduling coordinator in October 2021. *Id.* ¶ 9. She alleges that she spoke with an accent,

---

[1] In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). The facts in this section are based on Plaintiff's amended complaint, ECF No. 21.

"consumed traditional Jamaican dishes" at work, and informed Defendants that she is Jamaican. *Id.* ¶¶ 11, 12, 13 n.5.

Plaintiff alleges that other non-Jamaican colleagues were given benefits and perks that she was not granted. For example, she says that her requests to work remotely were "generally denied," while the telework requests of non-Jamaican employees were granted. *Id.* ¶ 25. She also alleges that she was not given a company laptop, company phone, and company credit card, unlike a U.S.-born colleague with the same title and primary duties. *Id.* ¶¶ 27, 28. She alleges that Defendants denied one of Plaintiff's requests for paid time off (PTO), while they allowed non-Jamaican employees to "freely use PTO." *Id.* ¶ 29. Plaintiff also says that "unlike her non-Jamaican colleagues," she was not allowed to use the bathroom in the office, including instructing the building owner "not to have his maintenance worker unlock the locked bathroom door." *Id.* ¶ 34. She also alleges general mistreatment, including that she was "spoken to in a derogatory manner and blamed for unsubstantiated infractions," "berated unjustly," and "cussed out." *Id.* ¶¶ 26, 31, 32. She contends that "U.S.-born, non-Jamaican workers for Defendants were not treated in this disparaging and belittling fashion." *Id.* ¶ 33.

In February 2022, Ms. Wilkins reported what she believed was fraudulent insurance activity involving her coworker, Paula Johnson, to the Maryland Insurance Administration's Fraud Division (the "MIA"). *Id.* ¶ 14. Ms. Wilkins believed that Ms. Johnson forged her (Ms. Wilkins's) signature on a form necessary to collect short-term disability benefits from an insurance policy that had been secured by Swinton LLC for its employees. *Id.* ¶ 14 n.8. Ms. Wilkins alleges that Ms. Swinton and Swinton LLC "knew what Ms. Johnson was doing in real time." *Id.* ¶ 15. She also says that Ms.

Swinton and Ms. Johnson "ask[ed] her to advise the [insurer], falsely, that she . . . had signed and authorized" Ms. Johnson's fraudulent request for benefits. *Id.* ¶ 16.

On March 7, 2022, a representative from the MIA communicated with Swinton LLC's HR Manager. *Id.* ¶¶ 17, 18. Ms. Wilkins states that "[t]ellingly," she was terminated later "the very same day." *Id.* ¶ 18. The stated reason for her termination was alleged infractions "concerning masking and COVID testing," which Ms. Wilkins characterizes as "clearly pretextual" and "unsupported by reality." *Id.* ¶¶ 20, 21. She says that non-Jamaican coworkers engaged in similar conduct but were not terminated. *Id.* ¶ 36. Ms. Wilkins says that the next day, March 8, Defendants expressly refused to document in writing "the alleged grounds for [her] termination." *Id.* ¶ 22.[2]

In March 2022, soon after her termination, Ms. Wilkins filed a Charge of Discrimination with the Maryland Commission on Civil Rights. *Id.* ¶ 38. In February 2024, the EEOC issued a right-to-sue notice. *Id.* ¶ 40. Plaintiff filed this case in the Circuit Court for Baltimore City in May 2024. *See* ECF No. 4. Defendants removed the case to this court in September 2024 and filed a motion to dismiss shortly thereafter. ECF Nos. 1 & 6.[3] Plaintiff initially opposed the motion to dismiss, ECF No. 19, and then filed an amended complaint. ECF No. 21. Defendants moved to dismiss the amended

---

[2] Defendants contend that Ms. Wilkins was not terminated, but instead voluntarily resigned. ECF No. 24 at 10 n.4. But they acknowledge that at the pleading stage, the Court must accept Plaintiff's allegation that she was terminated. *Id.*

[3] Because the amended complaint takes the place of the original complaint, the Court will deny as moot Defendants' motion to dismiss the original complaint, ECF No. 6. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("an amended pleading ordinarily supersedes the original and renders it of no legal effect") (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000)).

complaint, ECF No. 24. Plaintiff opposed the motion, ECF No. 29, and Defendants filed

a reply brief. ECF No. 30.

## II.    DISCUSSION

### A.    Wrongful termination (Count 1)

Plaintiff alleges that she was wrongfully terminated because she refused to

participate in, and acted to report, activity involving Defendants that she believed

amounted to insurance fraud. ECF No. 21 ¶¶ 14–18. Only the Individual Defendants seek

dismissal of this claim, and the sole argument they make for dismissal is that Plaintiff

has failed "to plead any facts suggesting the Individual Defendants formulated Swinton

[LLC]'s decision to fire her." ECF No. 24 at 10.[4] They argue that Plaintiff is required to

plead sufficient facts to show that they "played a dominant role" in the company's affairs

and "primarily formulated the decision to terminate her," and that she has not alleged

facts that satisfy that standard. *Id.* Plaintiff contends that a wrongful discharge claim

can be brought against owners or management as individuals and that she has alleged

sufficient facts to proceed on a wrongful termination claim against the Individual

Defendants personally. ECF No. 29-2 at 18–20.

"In *Adler v. American Standard Corp.*, [291 Md. 31 (1981)], the Court of Appeals

of Maryland recognized a narrow cause of action for wrongful discharge of an otherwise

at-will employee." *Rollins v. Rollins Trucking, LLC*, Case No. JKB-15-cv-3312, 2016 WL

81510, at *4 (D. Md. Jan. 7, 2016). Such a claim arises where "an employee refuses to

engage in unlawful conduct and is terminated as a result." *Yuan v. Johns Hopkins*

---

[4] Citations to page numbers refer to the number appearing in the CM/ECF header for
this and the other filings referenced herein, which may not align with a document's
original page numbering.

*Univ.*, 452 Md. 436, 459 (2017). The wrongful discharge doctrine is an "exception" to the general principle that an at-will employee may be discharged "for any reason, or no reason at all." *Wholey v. Sears Roebuck*, 370 Md. 38, 49 (2002). To establish wrongful discharge, "the employee must be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee." *Id.* at 50–51.

But in part because this is a common law cause of action, not created by the General Assembly, and because the cause of action serves to "provide a remedy for an otherwise unremedied violation of policy," *Yuan*, 452 Md. at 452, the Maryland courts have been hesitant to expand the cause of action, and strict in enforcing its limitations. One such limitation is the requirement that the employee's discharge have violated a "clear mandate of public policy." *Adler*, 291 Md. at 47. As the Supreme Court of Maryland recognized even when it first recognized the cause of action, "the theory of public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, only with the utmost circumspection." *Id.* at 46 (quoting *Patton v. United States*, 281 U.S. 276, 306 (1930)). "The public policy of one generation may not, under changed conditions, be the public policy of another." *Id.* (quoting *Patton*, 281 U.S. at 306). Thus, the fact that an employee has been "fired for retaliation for reporting a violation of a state or federal law is alone insufficient to establish a valid wrongful discharge claim based on public policy." *Yuan*, 452 Md. at 451–52. On one hand, in *Adler* itself, the Supreme Court of Maryland held that allegations that the employee had reported "falsification of corporate records" was insufficiently "specific[] to mount up to a prima facie showing that the claimed

5

misconduct . . . violated the public policy of this State." *Adler*, 291 Md. at 43–44. So too

when it came to allegations of "research misconduct in a federally funded project."

*Yuan*, 452 Md. at 439, 456. On the other hand, "a clear public policy mandate exists in

the State of Maryland which protects employees from a termination based upon the

reporting of suspected criminal activities to the appropriate law enforcement

authorities." *Wholey*, 370 Md. at 43.

Here, the Court need not decide whether Plaintiff has adequately alleged that

reporting to the MIA that her coworker had allegedly forged her signature on the short-

term disability claim qualified as a basis for termination (if she was terminated) that

would violate a "clear mandate of public policy." *Adler*, 291 Md. at 47. Defendants have

not moved to dismiss on that basis, and Swinton Home Care, LLC has not moved to

dismiss Count 1 at all. The sole question is whether Count 1 states a claim on which relief

can be granted against the Individual Defendants, Mr. and Ms. Swinton. And those

Individual Defendants have not argued that individual managers can *never* be held

liable for wrongful discharge under Maryland law. So the Court is not presented with

that question either. Instead, their argument is that the allegations are insufficient to

bring Plaintiff's claim within the exception articulated (in dicta) in a 1985 case in which

the Appellate Court of Maryland (then the Court of Special Appeals) indicated that it

was not excluding the possibility that, in some limited circumstances, a terminated

employee may bring a wrongful termination claim against "an 'officer' of a corporation

or other business entity who plays a dominant role in the affairs of the corporate

employer and who primarily formulates the corporation's decision to fire a particular employee or group of employees." *Moniodis v. Cook*, 64 Md. App. 1, 14 (1985).[5]

As far as this Court is aware, in only one case has a Maryland appellate court allowed a claim seeking to impose personal liability for the tort of wrongful termination on a corporate "officer" to proceed: *Bleich v. Florence Crittenton Servs. of Balt., Inc.*, 98 Md. App. 123 (1993). There, the court decided that there was sufficient evidence to permit a wrongful discharge claim asserted against the executive director of a residential child care facility to proceed to trial. *Id.* at 146 (holding that, "[a]lthough the evidence to date as to Ms. Davis's 'dominant role' in [the residential facility] is not overwhelming, we cannot say that a fair-minded jury could not find on the basis of it that she did exercise a dominant role and 'primarily formulate[d]' the . . . decision to fire Ms. Bleich") (third alteration in original). And Plaintiff here has identified one decision by a judge of this Court determining that allegations were sufficient to permit a wrongful discharge claim against individual managers to proceed, in that case past the pleadings stage. *Hoffman v. Balt. Police Dep't.*, 379 F. Supp. 2d 778, 788–90 (D. Md. 2005).

In addition, the Maryland courts have framed the tort of wrongful termination based on violations of public policy mandates as an "exception to the at-will employment rule." *Yuan*, 452 Md. at 450. And when an employee works for a company, the person's employer is (generally) the company itself, not the individual officers of the company. So insofar as the wrongful termination tort is an exception to the rule that an

---

[5] That statement was dicta because the *Moniodis* court held that the individual defendants there, who were mid-level managers—one who was involved in developing a polygraph policy but did not have "ultimate veto power" over it, and one who applied the policy to employees but "had little or no policy-making authority" himself—could not be personally liable for wrongful discharge. 64 Md. App. at 14.

employer may generally terminate the employment of an at-will employee for any lawful

reason (*e.g.*, that does not discriminate on unlawful grounds, and is not for a reason that

would violate a clear mandate of public policy), it does not necessarily follow that an

employer's termination decision to terminate an employee on *unlawful* grounds should

give rise to personal liability by company officers. *Cf. Lissau v. S. Food Serv., Inc.*, 159

F.3d 177, 178 (4th Cir. 1998) ("Employees are not liable in their individual capacities for

Title VII violations.").

Against the backdrop of Maryland courts' instruction to be cautious about

expanding the tort of wrongful discharge, and only scant authority that wrongful

discharge claims can give rise to personal liability by managers or officers (and no such

authority from the Maryland Supreme Court), this Court turns to the question of

whether Count 1 may proceed against the Individual Defendants.

Plaintiff contends that Mr. and Ms. Swinton should be personally liable for

wrongful discharge because they "ran the business by owning it, operating it, and

directing it," "had the authority to hire and fire employees," and "actively and personally

participated in those processes." ECF No. 29-2 at 20 (citing the Amended Complaint,

ECF No. 21 ¶¶ 3, 59, 73 & 86). Plaintiff states that "[w]hile it is true that neither of them

communicated Defendants' decision to terminate Plaintiff directly to her, *see* [ECF No.

21] ¶ 21 n.15, all of the above-referenced dynamics clearly 'evidence that the decision to

fire Plaintiff would have been formulated by Mr. Swinton and Mrs. Swinton.'" *Id.*

(quoting ECF No. 21 ¶ 21 n.15). She further alleges that Ms. Swinton sought Plaintiff's

participation in the alleged insurance fraud and that Plaintiff's refusal to assist, and her

decision to report to the MIA instead, was the actual reason for her termination. *Id.* ¶ 16.

And she alleges that Ms. Swinton is "quite close, both personally and professionally,

dating back years" with Ms. Johnson, the employee involved in the alleged insurance fraud. *Id.* ¶ 14 n.7.

The Court concludes that these allegations are sufficient at the pleadings stage to deny the Individual Defendants' argument for dismissal of Count 1. As noted above, the Maryland courts seem to have authorized employees who have been terminated on grounds that violate clear mandates of public policy to sue "an 'officer' of a corporation or other business entity who play[ed] a dominant role in the affairs of the corporate employer and who primarily formulate[d] the corporation's decision to fire a particular employee or group of employees." *Moniodis*, 64 Md. App. at 14. As Plaintiff acknowledges, discovery may well show that there is no nexus between either of the Individual Defendants' actions and her separation from employment in violation of a clearly-established Maryland public policy. *See* ECF No. 29 at 8 n.8 ("discovery is needed to learn more about the inner-workings of Defendants' termination decision"). But here, the alleged facts, accepted as true, create a plausible inference that the Individual Defendants were "officer[s]" of Swinton Home Care, that they "play[ed] a dominant role in the affairs" of Swinton Home Care, and that they "primarily formulate[d]" the alleged decision to terminate Ms. Wilkins's employment. *Moniodis*, 64 Md. App. at 14.

At the summary judgment stage, Plaintiff will need to not only establish that her employment was terminated, and that the Individual Defendants in fact played "dominant" roles in the company and "primarily formulate[d]" the decision to fire her, *Moniodis*, 64 Md. App. at 14, and will need to prove that there was a "nexus between the employee's conduct and the employer's decision to fire the employee." *Wholey*, 370 Md. at 51. Plaintiff will also need to establish that the other elements of the tort are

satisfied—including that making the report to the MIA about a claim for short-term disability benefits is more akin, for example, to the security officer's reporting of suspected theft that the Maryland Supreme Court held satisfied the "clear mandate of public policy" requirement in *Wholey*, 370 Md. at 51, 59–60, than to the reporting of alleged falsification of biomedical research that the *Yuan* court held did not satisfy, 452 Md. at 462. But in light of the Maryland case law and the narrow argument for dismissal that the Individual Defendants have asserted, their motion to dismiss Count 1 for wrongful discharge against the Individual Defendants will be denied.

## B.    Title VII claim (Count 2) and Maryland Fair Employment Practices Act claim (Count 4)

In addition to alleging in Count 1 that she was terminated for making the report to the MIA as discussed above, Plaintiff alleges in Counts 2 and 4 that Swinton LLC terminated her employment in part because of her national origin, in violation of Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act (FEPA). ECF No. 21 ¶¶ 49–63. To make out a Title VII discrimination claim, a plaintiff must "allege facts to satisfy the elements of a cause of action created by [Title VII]," *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). That is, Ms. Wilkins must allege sufficient facts from which the Court can draw a reasonable inference that her employer "discriminate[d] against [her] . . . because of [her] . . . national origin." 42 U.S.C. § 2000e–2(a)(1). "FEPA is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII." *Finkle v. Howard Cnty., Md.*, 12 F. Supp. 3d 780, 784 (D. Md. 2014) (citing *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 482 n.8 (2007)). Defendants argue that Counts 2 and 4

should be dismissed because Plaintiff has failed to adequately allege causation. ECF No. 24-1 at 13–15.[6]

Ms. Wilkins contends that she was treated differently from non-Jamaican employees in the "terms and conditions" of employment. She alleges her requests to work remotely were "generally denied" while her non-Jamaican coworkers' requests to telework were granted, ECF No. 21 ¶ 25; a U.S.-born coworker with the same job title, duties, and direct supervisor was given a company laptop, phone, and credit card while she was not, *id.* ¶¶ 27, 28; and she was not permitted to use her paid time off on one occasion while "non-Jamaicans . . . freely use[d] PTO." *Id.* ¶ 29. Ms. Wilkins also alleges that, "unlike her non-Jamaican colleagues," she was not allowed to use the bathroom in the office. *Id.* ¶ 34. And with respect to her alleged termination, she contends that Defendants say she was terminated for policy infractions regarding masking and COVID testing, but non-Jamaican coworkers "engaged in similar conduct but were not terminated." *Id.* ¶ 36. She contends that the combination of these circumstances "support[s] a finding that the grounds given for Plaintiff's termination were pretextual" and that her national origin was the "true reason" for her termination. *Id.* ¶ 61.

A plaintiff does not need to show that nationality (or other protected characteristic covered by Title VII) was the *sole* reason for an adverse employment

---

[6] Defendants also argue that Counts 2 and 4 should be dismissed for failure to allege that Plaintiff's job performance was satisfactory. ECF No. 24-1 at 15–16. But that is an element of a *prima facie* case, not the elements of the cause of action. A plaintiff bringing a Title VII discrimination claim is not required to establish a prima facie case of discrimination under the *McDonnell Douglas* framework to survive a motion to dismiss. *See McCleary-Evans*, 780 F.3d at 584-85 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "The prima facie case . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).

action; a plaintiff need only plead sufficient facts to show that the characteristic was a
"motivating factor" of the action. *See Comcast Corp. v. Nat'l Assoc. of African Am.-
Owned Media*, 589 U.S. 327, 337 (2020). Here, Plaintiff's factual allegations are
sufficient to state a claim on which relief can be granted. Her allegation that she was told
she was terminated for certain masking and COVID testing behaviors for which other
employees were not terminated, combined with numerous allegations of disparate
treatment compared to non-Jamaican employees during her employment (*e.g.*,
bathroom access, telework arrangements), support an adequate (if not robust) inference
that her alleged termination was "because of" her nationality.[7] The Court will therefore
deny the motion to dismiss as to Title VII and FEPA.

### C.    Section § 1981 claim (Count 3)

Plaintiff alleges that she faced "discriminatory mistreatment" based on her
"Jamaican ancestry, ethnicity, and characteristics" in violation of 42 U.S.C. § 1981. ECF
No. 21 ¶ 69. Section 1981 "affords a federal remedy against discrimination in private
employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454,
459–60 (1975). Section 1981 does not create a cause of action for discrimination on the
basis of national origin. *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 157
(4th Cir. 2018). But in some instances, intentional discrimination "[based on] ancestry

---

[7] Because Plaintiff has pled in the alternative to Count 1 that her termination was
motivated by nationality discrimination, ECF No. 21 ¶ 61, the Court does not decide at
this time whether the other alleged employment actions—on their own—are sufficiently
adverse to support a Title VII discrimination claim. *See Muldrow v. City of St. Louis,
Mo.*, 601 U.S. 346, 359 (2023) (holding that a plaintiff alleging discrimination under
Title VII "need show only some injury respecting her employment terms or
conditions . . . [that] left her worse off, but [it] need not have left her significantly so").

or ethnic characteristics" of an identifiable class of persons falls within the scope of racial discrimination barred by § 1981. *See St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).[8] For a § 1981 claim, a plaintiff must show that race was a "but-for" cause of the plaintiff's injury. *Comcast*, 589 U.S. at 333.

Ms. Wilkins alleges that she experienced discrimination based on her "Jamaican ancestry, ethnicity, and characteristics." ECF No. 21 ¶ 69; *see also id.* ¶ 72 (alleging same). Defendants argue that Ms. Wilkins has not alleged that discrimination was the but-for cause of her termination and, additionally, has not pled facts alleging that the Individual Defendants engaged in any intentional, affirmative acts of discrimination. ECF No. 24-1 at 13–15, 20–21.

Plaintiff has not pled sufficient facts to support a reasonable inference that her termination would not have occurred "but for" her Jamaican ancestry, ethnicity, and characteristics. *See* ECF No. 21 ¶ 75. Although the allegations detailed above are sufficient to permit a reasonable inference that Plaintiff's nationality was *a* motivating factor for her termination, they do not rise to the level that permit a reasonable inference that the termination would not have occurred "but for" her Jamaican ancestry, ethnicity, and characteristics, which is a higher standard. *See Jones v. City of Salisbury, Md.*, Case No. 22-cv-2628-JRR, 2023 WL 5565831, at *5 (D. Md. Aug. 28, 2023) ("Section 1981 claims for racial discrimination are held to a more stringent pleading standard" than Title VII racial discrimination claims.) (citing *Comcast*, 589 U.S. at 341). Notwithstanding Plaintiff's conclusory statements that she "would not have suffered . . .

---

[8] The Court does not decide at this stage whether the circumstances here constitute "racial discrimination" for the purposes of § 1981 because Defendants did not seek dismissal on this basis.

discriminatory mistreatment but for her Jamaican ancestry, ethnicity, and characteristics," *id*. ¶ 69, and that these traits were the "true reason" for her termination, *id*. ¶ 75, these conclusory statements are not enough to show that her ancestry, ethnicity, and characteristics were the but-for cause for her termination.[9] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court will dismiss Plaintiff's section 1981 claim (count 3).

## III.   CONCLUSION

For the reasons explained above, the motion to dismiss will be granted as to count 3 and denied as to counts 1, 2, and 4. An appropriate order follows.


Date:  September 5, 2025                        _____/s/_____
                                                                Adam B. Abelson
                                                                United States District Judge

---

[9] Because the Court resolves this count on the causation issue, it need not consider whether Plaintiff has sufficiently alleged that Individual Defendants engaged in intentional, affirmative acts of discrimination.